**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RAPHAEL BERNSTEIN, JANE BERNSTEIN, JOHN BERNSTEIN, and DANIEL BERNSTEIN,

                Plaintiffs,

        v.

JPMORGAN CHASE BANK, N.A., AMERICAN EXPRESS NATIONAL BANK, and BANK OF AMERICA, N.A.,

                Defendants.

Case No. 1:24-cv-03552-JGLC

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS LIMITED MOTION FOR RECONSIDERATION, OR IN THE <u>ALTERNATIVE, FOR CERTIFICATION AS TO AN INTERLOCUTORY APPEAL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

I.    THE COURT SHOULD GRANT RECONSIDERATION AND GRANT CHASE'S
      MOTION TO DISMISS PLAINTIFFS' GBL § 349 CLAIM ............................................. 3

   A.   Legal Standard ........................................................................................................ 3

   B.   Plaintiffs Have Not And Cannot Allege That Their Injury Resulted From Chase's
        Statements On Its Website Or The Email Sent To The Account Holders' Son's Assistant
        ............................................................................................................................... 3

   C.   Plaintiffs Do Not Plausibly Allege Any "Materially Misleading" Statement Made By
        Chase That Would Support A GBL § 349 Claim ...................................................... 6

II.   IF THE COURT DOES NOT RECONSIDER ITS DECISION AS TO THE GBL § 349
      CLAIM, IT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL ....... 8

   A.   Legal Standard ........................................................................................................ 8

   B.   There Is A Controlling Question Of Law As To Which There Is A Substantial Ground for
        Difference of Opinion Here .................................................................................... 9

   C.   An Immediate Appeal Can And Will Materially Advance The Ultimate Termination Of
        The Litigation ....................................................................................................... 10

CONCLUSION ..................................................................................................................... 11

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litigation*,
   162 F. Supp. 2d 953 (N.D. Cal. 2016) ......................................................................5

*Bibicheff v. PayPal, Inc.*,
   844 F. App'x 394 (2d Cir. 2021) ..............................................................1, 4, 5, 6

*Chambers v. Maplebear, Inc.*,
   746 F. Supp. 3d 206 (S.D.N.Y. 2024)......................................................................9

*Dorris v. Danone Waters of America*,
   2024 WL 4792048 (S.D.N.Y. Nov. 14, 2024).........................................................3

*Flo & Eddie, Inc v. Sirius XM Radio Inc.*,
   2015 WL 585641 (S.D.N.Y. Feb. 10, 2015).............................................................9

*Goldych v. Eli Lilly & Co.*,
   2006 WL 2038436 (N.D.N.Y. July 19, 2006) ..........................................................2

*Holmes v. Cap. One, N.A.*,
   2023 WL 6318883 (N.D.N.Y. Sept. 28, 2023).........................................2, 4, 5, 6

*Hunter v. Debmar-Mercury LLC*,
   2024 WL 64768 (S.D.N.Y. Jan. 5, 2024) ....................................................8, 9, 10

*Kane v. University of Rochester*,
   2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024).........................................................5

*Kasilingham v. Tilray, Inc.*,
   2023 WL 5352294 (S.D.N.Y. Aug. 21, 2023) .........................................................3

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
   Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990)......................................................................................9

*Lawyer v. Cota*,
   764 F. App'x 65 (2d Cir. 2019) ...............................................................................3

*Loeb v. Architecture Work, P.C.*,
   154 A.D.3d 616 (N.Y. App. Div. 2017) ..................................................................4

*Minskoff v. Am. Exp. Travel Related Servs. Co.*,
   98 F.3d 703 (2d Cir. 1996).......................................................................................6

*Naughright v. Weiss*,
   2012 WL 2402153 (S.D.N.Y. June 26, 2012) .......................................................................3

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ................................................................................................5

*Schoolcraft v. City of New York*,
   298 F.R.D. 134 (S.D.N.Y. 2014) ........................................................................................3

*Sportsinsurance.com, Inc. v. Hanover Ins. Co., Inc.*,
   2021 WL 1404581 (N.D.N.Y. Apr. 14, 2021) ...................................................................10

*Tolin v. AMBAC Fin. Grp., Inc.*,
   2010 WL 431971 (S.D.N.Y. Feb. 5, 2010) ..........................................................................3

*Yuille v. Uphold HQ Inc.*,
   686 F. Supp. 3d 323 (S.D.N.Y. 2023) .................................................................................8

**Statutes**

28 U.S.C. § 1292(b) .........................................................................................................1, 2, 8, 9

New York GBL § 349 ............................................................................................... *passim*

Chase submits this memorandum of law in support of its limited motion for reconsideration of only the portion of the Opinion and Order dated March 28, 2025 (the "Order") denying Chase's Motion to Dismiss ("Motion") count six of the Complaint for violation of General Business Law ("GBL") § 349 and necessarily for an order dismissing the Complaint in its entirety, with prejudice. Chase does ***not*** seek reconsideration of the rest of the Order granting Chase's Motion and dismissing the five other counts in the Complaint.[1]  In the alternative, Chase requests that this Court certify an interlocutory appeal under 28 U.S.C. § 1292(b).

## PRELIMINARY STATEMENT

Chase respectfully requests that the Court revisit its ruling permitting the GBL § 349 claim against Chase to proceed as the Court did not consider or address certain of Chase's key arguments and cited authorities in its Order, including binding and persuasive authority from this Circuit.  It remains Chase's position that Plaintiffs have not plausibly alleged all elements required of a GBL § 349 claim, as is their burden in federal court.

As a critical threshold matter, as Chase argued in the Motion, Plaintiff cannot establish "the third prong of the GBL analysis," as applied in the Second Circuit and New York courts, because Plaintiffs cannot plausibly establish that ***Chase's*** conduct is what caused their purported injury. *Bibicheff v. PayPal, Inc.*, 844 F. App'x 394, 396 (2d Cir. 2021) (cited in Reply at 10); *see also* MTD at 25.  This is because Plaintiffs' own Complaint has already conceded that Raphael and Jane Bernstein's former part-time assistant—a non-party who has been prosecuted by the federal government for his actions against them—is the individual responsible for their loss, a concession recognized by the Court in its Order.  *See* Compl. ¶¶ 8-11, 20 and Order at 2-3 & 2. n. 2.  Plaintiffs

---

[1] All terms used herein not otherwise defined shall have the same meaning as in Chase's memorandum of law in support of its Motion to Dismiss ("MTD") (Doc. No. 22) and reply memorandum of law ("Reply") (Doc. No. 33) filed in support of the Motion.

thus cannot establish the requisite "causal nexus" between Chase's alleged Website statements and the Email and Plaintiffs' alleged "monetary loss." *Holmes v. Cap. One, N.A.*, 2023 WL 6318883, at *11 (N.D.N.Y. Sept. 28, 2023) (discussed in MTD at 3, 25). Put differently, Plaintiffs were not injured "by reason of" Chase's Website and Email, but rather, the unfortunate actions of Raphael and Jane Bernstein's former assistant. *Goldych v. Eli Lilly & Co.*, 2006 WL 2038436, at *8 (N.D.N.Y. July 19, 2006) (cited in MTD at 25). For this reason alone, the GBL § 349 claim should be dismissed as a matter of law upon reconsideration by this Court.

Chase also maintains that Plaintiffs have not plausibly alleged that the referenced statements by Chase were materially misleading. *See* MTD at 22-25, Reply at 10. As described further below, Chase respectfully requests that the Court reconsider its arguments on this point, too, in reconsidering its Order and the potential dismissal of the GBL § 349 claim against Chase.

In summary, allowing the GBL § 349 claim to stand based on the factual allegations in this particular Complaint would upend established precedent and thrust seemingly unlimited liability onto a consumer-facing entity that simply advertises services available to its customers but then a third party, acting for personal gain, intervenes to cause a loss to the customer that is untethered to the advertisement in question. GBL § 349 claims premised on such facts have been repeatedly dismissed and Plaintiffs' claim here is no different.

Chase respectfully submits that, upon reconsideration, the Motion should be granted in its entirety and Chase should be dismissed from this action with prejudice. In the alternative, Chase requests certification under 28 U.S.C. § 1292(b).

**ARGUMENT**

## I.    THE COURT SHOULD GRANT RECONSIDERATION AND GRANT CHASE'S MOTION TO DISMISS PLAINTIFFS' GBL § 349 CLAIM

### A.    Legal Standard

"[A] court may grant reconsideration where the party moving for reconsideration demonstrates . . . the need to correct a clear error or prevent manifest injustice." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (internal quotation omitted).  In other words, reconsideration may be granted "where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Tolin v. AMBAC Fin. Grp., Inc.*, 2010 WL 431971, at *1 (S.D.N.Y. Feb. 5, 2010) (internal quotation omitted); *see Lawyer v. Cota*, 764 F. App'x 65, 67 (2d Cir. 2019) (district court "overlooked controlling precedent"); *Dorris v. Danone Waters of America*, 2024 WL 4792048, at *2 (S.D.N.Y. Nov. 14, 2024) (granting partial motion to reconsider "to correct a clear error of law" and dismissing entirety of complaint) (quotation omitted); *Kasilingham v. Tilray, Inc.*, 2023 WL 5352294, at *8 (S.D.N.Y. Aug. 21, 2023) ("The Court has identified a clear error of law from its previous decision and, very narrowly, chooses to reconsider its analysis"); *Naughright v. Weiss*, 2012 WL 2402153, at *3 (S.D.N.Y. June 26, 2012) ("Because controlling precedent governing Plaintiff's fraud claim was not addressed, Robbins' motion for reconsideration is granted.").

### B.    Plaintiffs Have Not And Cannot Allege That Their Injury Resulted From Chase's Statements On Its Website Or The Email Sent To The Account Holders' Son's Assistant

As Chase argued in the Motion, Plaintiffs do not and cannot plausibly allege that they sustained their purported losses as a result of materially misleading conduct ***by Chase***.  MTD at 25.  Putting aside the content of the marketing statements on which Plaintiffs rely to make out their GBL § 349 claim, the fact remains that to establish injury under this cause of action Plaintiffs must

establish the "causal nexus" between these statements and their financial losses.  *Holmes*, 2023 WL 6318883, at *11.  Plaintiffs have not and cannot do so as a matter of law.  *See., e.g.*, *Loeb v. Architecture Work, P.C.*, 154 A.D.3d 616, 616-17 (N.Y. App. Div. 2017) (finding that "[e]even if, arguendo, defendant . . . engaged in consumer-oriented conduct by placing statements on its website, . . . [and] even if the statements on [this] website were deceptive, they did not cause plaintiff's injury," as this "alleged injury was a result of specific acts and omissions by the [other] individual defendant").

The Second Circuit's opinion in *Bibicheff*, which was cited in Chase's briefing on the Motion, is instructive.  844 F. App'x 394 (cited in Reply at 10).  There, the plaintiff alleged that "in derogation of its own 'policies and procedures with respect to suspicious and uncharacteristic account activity,' [defendant] failed to monitor and investigate . . . fake accounts created under Bibicheff's name, business name, and/or social security number by her office manager, who defrauded her."  *Id.* at 395-96.  The plaintiff brought a GBL § 349 claim "based on a series of alleged misrepresentations made by [defendant] on its website including, for example, that '[e]very transaction is monitored and analyzed within milliseconds to identify and help prevent fraud before it occurs,' that '[e]very transaction is heavily guarded behind our advanced encryption' and that [defendant] 'monitor[s] transactions 24/7 to help prevent fraud and identity theft.'"  *Id.*  The Second Circuit affirmed dismissal because:

> [T]here is . . . no basis in the particular circumstances alleged in this complaint to conclude that deceptive practices by [defendant] plausibly caused the injury that Bibicheff suffered. As alleged in the complaint, ***Bibicheff's injury was a result of her office manager's access to Bibicheff's personal and business information, including credit card information*** – access used by the office manager to defraud Bibicheff, but for which [defendant] is not alleged to have been responsible.

*Id.* at 397 (emphasis added).

4

Similarly, in *Holmes*, this court's sister court dismissed a GBL § 349 claim because "[t]he cause of Plaintiff's loss was the criminal acts of a third party . . . that Defendant had no control over." 2023 WL 6318883, at *11 (discussed in MTD at 3, 25 and Reply at 10). Just as in *Bibicheff* and *Holmes*, among other similar cases, the alleged financial injury to the Chase account holders here (Raphael and Jane Bernstein) was caused by their former assistant, not by any statement on the Website or in the Email, and Plaintiffs cannot plausibly allege otherwise.

While the Court relied on the "lost benefit of the bargain" theory vis-à-vis the third prong of the GBL § 349 claim in its Order, *see* Order at 25, Chase respectfully requests that the Court revisit this ruling. As the case law cited by the Court in its Order itself reflects, this theory of injury is typically employed where consumer-plaintiffs allege they made payments to the defendant "they would not have otherwise made" but-for the alleged materially misleading act or practice. *Kane v. University of Rochester*, 2024 WL 1178340, at *17 (W.D.N.Y. Mar. 19, 2024); *see also In re Anthem, Inc. Data Breach Litigation*, 162 F. Supp. 2d 953, 995–96 (N.D. Cal. 2016) (both cited in Order at 25). Here, Raphael and Jane Bernstein do not allege in the Complaint that, as account holders, they paid for any specific service from Chase that was not received and that this is what caused them financial losses. *See Kane*, 2024 WL 1178340, at *17 (describing the ruling in *Orlander v. Staples, Inc.*, 802 F.3d 289, 301 (2d Cir. 2015) as "the plaintiff sufficiently alleged an injury stemming from a misleading practice when he alleged that he would not have purchased a two-year service plan had he known that the defendant 'intended to decline to provide him any services in the first year' of the plan"). Indeed, they only vaguely refer to fraud protection services advertised and that they allegedly "relied upon" in maintaining and using their Chase accounts and credit cards. Compl. ¶¶ 98, 100.[2] Moreover, relying on this theory of injury ignores

---

[2] As Chase noted in the Motion, the Email to Daniel Bernstein's assistant did not involve the Plaintiffs' accounts and was not directed to the holders of the accounts. MTD at 12, 25.

that the former personal assistant managed Raphael and Jane Bernstein's affairs and had apparent authority to use their accounts.[3]  This Court should not turn a blind eye to the true culprit and cause of Raphael and Jane Bernstein's losses—their former assistant—and, as in *Bibicheff* and *Holmes*, find that a GBL § 349 claim cannot stand due to the lack of causal nexus.

### C.    Plaintiffs Do Not Plausibly Allege Any "Materially Misleading" Statement Made By Chase That Would Support A GBL § 349 Claim

As Chase argued in the Motion, Plaintiffs have not shown that Chase committed any materially misleading act directed to the public and which would be likely to mislead a reasonable consumer.  *See* MTD at 24-25, Reply at 10.  While this Court determined in the Order that "Plaintiffs have plausibly alleged that Chase's website is likely to mislead a reasonable customer into believing that their Chase bank accounts would be insulated from the alleged fraud at issue in this case," Order at 24, Chase respectfully asks this Court to reconsider when looking carefully at the language on the Website that is cited in Plaintiffs' Complaint.[4]

The Website statements relied upon by Plaintiffs in their Complaint reflect simply that Chase offers a range of security features, presents its customers with diverse ways to protect their account, and warns its customers of the potential for fraud and scams.  *See* Compl. ¶ 28.  Nowhere on the Website does it suggest that Plaintiffs should have been insulated from their assistant taking financial advantage of them while acting within the scope of his employment and managing their affairs.  Nor does it make a misleading statement suggesting that Chase will be serving as a

---

[3] As Chase argued in the Motion—and Plaintiffs effectively admit in the Complaint—account statements were sent that itemized the charges and reasonably could have put the account holders on notice of the charges, and any balances were paid off, giving Chase the "impression that nothing was amiss."  *Minskoff v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 710 (2d Cir. 1996) (cited in MTD at 17); *see also* Compl. ¶ 11 (conceding statements were in fact sent and that their assistant simply "paid off the balances"); Exhibits A, D, E, & F (collection of statements reflecting zero past due amounts and that the prior statement had been paid in full).

[4] The Email to Daniel Bernstein's assistant was not publicly disclosed and thus cannot plausibly be viewed as consumer-oriented conduct having a "broader impact on consumers at large," as is required to establish a § 349 claim. *See* Order at 22.  As the Court's Order only focused on the statements on Chase's Website as the basis for its ruling, Chase only seeks reconsideration of the Court's finding as to the statements on the Website herein.

conservator or chaperone vis-à-vis an account holder. To the contrary, the Website states that while certain features are offered to account holders, customers must be vigilant and monitor their own accounts. Contextual language on the Website, but omitted from the Complaint, warrants close review.[5]

First, Plaintiffs quote from the Website that "older adults in particular are at risk for fraud."[6] In so doing, they omit language on that same page that provides crucial context. For example, it states: "Older adults are especially at risk for financial abuse, especially by those close to them. You can help prevent this type of abuse by keeping an eye out for a few red flags." Website #1. One of the "red flags" listed is "[u]nusual financial activity," noting to customers that "[s]igns that could point to financial abuse include unpaid bills, missing checkbooks, suspicious signatures, missing valuables and adding unexpected authorized users to financial accounts," and for a customer to contact the bank "right away" if such suspicion is flagged. Website #1 also says "[p]erpetrators can be anyone, including caretakers, lawyers, business associates, new friends, and even family members." *Id.*

In addition, Plaintiffs quote from the Website's references to "24/7 Credit Card Monitoring" and "safeguards against suspicious activity."[7] Plaintiffs omit language showing steps customers should themselves take, such as using Chase's app to "review transactions on-the-go for unusual activity," "customize the alerts you want to receive," and adding 2-step verification to protect account access online. Website #2. They similarly omit language making clear that unauthorized transactions on Credit Cards must be timely disputed. *See id.* ("If you see an

---

[5] Plaintiffs certainly do not specify any particular feature or service offering that Chase allegedly failed to provide that could have possibly prevented their assistant's "felonious theft." Compl. ¶ 94.

[6] Compl. ¶ 28 (referencing the website https://www.chase.com/digital/resources/privacy-security/financial-abuse (hereinafter, "Website #1")).

[7] Compl. ¶ 28 (referencing the website https://www.chase.com/digital/resources/privacy-security/security/how-we-protect-you (hereinafter, "Website #2").

unauthorized charge, tell us immediately by calling the number on the back of your card or billing statement.").

Respectfully, a reasonable consumer reviewing the statements in the Complaint in their full context could not have interpreted them to suggest complete insulation from any fraud, including from anyone within their employ and with unfettered access. To be sure, a reasonable consumer reviewing statements such as those on the Chase Website, in their full context, "could understand the statements alleged in the Complaint to suggest that [Chase] deployed specific security protocols that it believed to be reasonably adequate, but the statements cannot be read to provide an assurance that there would be no circumstances under which [fraud may occur in their account]." *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 347 (S.D.N.Y. 2023) (granting motion to dismiss GBL § 349 claim brought by 77-year-old plaintiff). In *Yuille,* the court found that "the statements that Uphold made could not have communicated the impression that Uphold's platform was so secure that no hackers, no matter how talented, could penetrate Uphold's platform and that assets stored in Uphold's account were safe from all potential harms." *Id.* Similarly, here, the statements made by Chase could not have communicated the impression that Raphael and Jane Bernstein could not possibly be defrauded by their assistant.

## II.    IF THE COURT DOES NOT RECONSIDER ITS DECISION AS TO THE GBL § 349 CLAIM, IT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL

### A.    Legal Standard

In the alternative, if the Court does not reconsider its ruling, Chase respectfully requests that this Court certify its Order for interlocutory review. "28 U.S.C. § 1292(b) authorizes a district court to certify an order for interlocutory appeal where the 'order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Hunter v.*

*Debmar-Mercury LLC*, 2024 WL 64768, at *2 (S.D.N.Y. Jan. 5, 2024); *see also, e.g.*, *Chambers v. Maplebear, Inc.*, 746 F. Supp. 3d 206, 217 (S.D.N.Y. 2024) (Clarke, J.) ("The Court is satisfied that this Order meets the criteria set out in Section 1292(b), and accordingly will certify the Order for interlocutory appeal."). While a valid reason for such a request must exist, "when a ruling satisfies the § 1292(b) criteria and involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal." *Hunter*, 2024 WL 64768, at *2 (quoting *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013)).

### B.    There Is A Controlling Question Of Law As To Which There Is A Substantial Ground for Difference of Opinion Here

First, "it is clear that a question of law is 'controlling' if reversal of the district court's order [as to the GBL § 349 claim] would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). Moreover, "[a] question of law can also be controlling if reversal . . . could significantly affect the conduct of the action or if the certified issue has precedential value for a large number of cases." *Hunter*, 2024 WL 64768, at *2 (citation omitted). Such a question of law must be such that "the reviewing court could decide [the matter] quickly and cleanly without having to study the record." *Id.* (quotation omitted).

Here, Chase meets this standard as the remaining GBL § 349 claim turns on whether Plaintiffs can establish the injury element of their claim against Chase where they have alleged they relied upon Chase advertising to maintain their accounts but also conceded in their pleading that their financial loss came from the actions of a non-party former employee, not Chase. This is a simple question and would terminate this action as against Chase if resolved in Chase's favor.

"This issue also qualifies as a controlling question of law because it will have precedential value[.]" *Flo & Eddie, Inc v. Sirius XM Radio Inc.*, 2015 WL 585641, at *2 (S.D.N.Y. Feb. 10,

2015) (quotation omitted).  Indeed, following the Order, other consumer-facing entities, including other financial institutions, "will undoubtedly be sued" by account holders claiming that their advertising was relied upon and that this is sufficient to establish a GBL §349 claim, even if a third-party is the one that perpetrated the fraud and thus is the person responsible for the loss.  *Id.* "Receiving authoritative guidance" would be helpful for these future cases too.  *Id.*

There is also substantial ground for difference of opinion as to whether the "lost benefit of the bargain" theory prevails over the line of cases that say that a GBL § 349 claim cannot lie where the injury in question was indisputably caused by the actions of a third party (here, the former assistant).  While this Court has ruled that the "lost benefit of the bargain" theory is sufficient, "fair-minded jurists could reach another result."  *Sportsinsurance.com, Inc. v. Hanover Ins. Co., Inc.*, 2021 WL 1404581, at *8 (N.D.N.Y. Apr. 14, 2021).  Indeed, they could find that there is no causal nexus between Chase's advertisements and the purported injury as that financial loss was caused by Raphael and Jane Bernstein's former assistant

## C.    An Immediate Appeal Can And Will Materially Advance The Ultimate Termination Of The Litigation

It is well-settled that if the reversal of a court's order would terminate the case in its entirety against a defendant, then that would "materially advance the ultimate termination of the litigation." *See Hunter*, 2024 WL 64768, at *5 ("Reversal . . . would end this case in its entirety and would thus advance the ultimate termination of the litigation . . . Here [] there is one plaintiff and a single cause of action [remaining in the case,] . . . [so t]here is therefore no risk of unduly delaying discovery as to certain claims while an appeal is pending concerning other claims.") (internal quotations and citations omitted).  This Court should reach the same result.

## **CONCLUSION**

For these reasons, Chase respectfully requests that the Court reconsider the ruling in its Order and find that the Complaint should be dismissed with prejudice against Chase.  In the alternative, Chase respectfully requests certification for an interlocutory appeal.

Dated: April 11, 2025
New York, New York                                    Respectfully submitted,

                                                              GREENBERG TRAURIG, LLP

                                                       By:
                                                              _/s/ Sylvia E. Simson_____
                                                                  Sylvia E. Simson
                                                                  Ryan Sirianni
                                                                  Sean O'Bryan
                                                              One Vanderbilt Avenue
                                                              New York, New York 10017
                                                              Tel: (212) 801-9200
                                                              Sylvia.Simson@gtlaw.com
                                                              Ryan.Sirianni@gtlaw.com
                                                              Sean.OBryan@gtlaw.com

                                                              *Counsel for Defendant*
                                                              *JPMorgan Chase Bank, N.A.*

11

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 6.3's word count limit because it contains 3,496 words, excluding the sections exempted by Rule 7.1(c).  In making this certification, I relied on the word count of the word-processing program used to prepare this document.

/s/ *Sylvia E. Simson*
Sylvia E. Simson