**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RAPHAEL BERNSTEIN, JANE BERNSTEIN, JOHN BERNSTEIN, and DANIEL BERNSTEIN,<br><br>                Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., AMERICAN EXPRESS NATIONAL BANK, and BANK OF AMERICA, N.A.,<br><br>                Defendants. | Case No. 1:24-cv-03552-JGLC |

**PLAINTIFFS RAPHAEL BERNSTEIN, JANE BERNSTEIN, JOHN BERNSTEIN, AND DANIEL BERNSTEIN'S OPPOSITION TO DEFENDANT JPMORGAN CHASE, N.A.'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, <u>FOR CERTIFICATION OF INTERLOCUTORY APPEAL</u>**

Dated: May 2, 2025

THE GALBRAITH LAW FIRM
Two Waterline Square
400 West 61st Street, Suite 1508
New York, NY 10023
Phone: (212) 203-1249

*Counsel for Plaintiffs*
*Raphael Bernstein*
*Jane Bernstein*
*John Bernstein*
*Daniel Bernstein*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1-2

ARGUMENT .............................................................................................................................. 2-10

    I.    THE COURT SHOULD DENY RECONSIDERATION OF
        CHASE'S MOTION TO DISMISS PLAINTIFFS' GBL § 349 CLAIM .............. 2-8

        A.  Legal Standard ................................................................................................ 2-3

        B.  The Bernsteins' Injury Is A Direct Result Of Chase's Materially
            Misleading Statements ................................................................................... 3-6

        C.  Chase Made Materially Misleading Statements That Support
            The Bernsteins' GBL § 349 Claim ............................................................... 7-8

    II.   INTERLOCUTORY APPEAL............................................................................ 8-10

        A.  Legal Standard ................................................................................................ 8-9

        B.  There Is No Substantial Ground For Difference Of Opinion
            Regarding The Controlling Question Of Law .......................................... 9-10

        C.  An Immediate Appeal Would Not Materially Advance The Ultimate
            Termination Of The Litigation ....................................................................10

CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Abortion Rights Mobilization, Inc. v. Regan*,
    552 F. Supp. 364 (S.D.N.Y. 1982) ................................................................................. 10

*Bibicheff v. PayPal, Inc.*,
    844 F. App'x 394 (2d Cir. 2021) ..................................................................................... 5

*Columbo v. Philips Bryant Park LLC*,
    No. 22-CV-775 (RA), 2025 U.S. Dist. LEXIS 66403
    (S.D.N.Y. Apr. 8, 2025) ................................................................................................2-3

*Glatt v. Fox Searchlight Pictures Inc.*,
    No. 11-cv-6784 (WHP), 2013 U.S. Dist. LEXIS 139594,
    2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013)) ............................................................... 9

*Herbert Constr. Co. v. Cont'l Ins. Co.*,
    931 F.2d 989 (2d Cir. 1991) ............................................................................................ 6

*Holmes v. Capital One, N.A.*,
    No. 3:22-CV-0823 (GTS/TWD), 2023 U.S. Dist. LEXIS 173632
    (N.D.N.Y. Sep. 28, 2023) ................................................................................................ 4

*Hunter v. Debmar-Mercury LLC*,
    2024 U.S. Dist. LEXIS 2943 (S.D.N.Y. Jan. 5, 2024) .................................................... 9

*Loeb v. Architecture Work, P.C.*,
    2017 NY Slip Op 07551, 154 A.D.3d 616, 62 N.Y.S.3d 787
    (App. Div. 1st Dept.) ....................................................................................................... 4

*Lowinger v. Morgan Stanley & Co. LLC,*
    (In re Facebook, Inc., IPO Sec. & Derivative Litig.)*,
    43 F. Supp. 3d 369 (S.D.N.Y. 2014) ............................................................................... 3

*Ret. Bd. Of the Policemen's Annuity & Ben. Fund of Chi. V. Bank of N.Y. Mellon*,
    2016 U.S. Dist. LEXIS 61483 *3 (S.D.N.Y. May 9, 2016) ............................................. 9

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) .............................................................................................. 2

*Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth.*,
    358 F. Supp. 2d 347 (S.D.N.Y. 2005) ............................................................................. 9

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992) ................................................................................. 2-3

*Yuille v. Uphold HQ Inc.*,
    686 F. Supp. 3d 323 (S.D.N.Y. 2023) ...................................................................... 8


**OTHER AUTHORITIES**

28 U.S.C. 1292(b) ........................................................................................................ 9-10

N.Y. Gen. Bus. Law § 349 ........................................................................................... 5-10

Plaintiffs Raphael Bernstein, Jane Bernstein, John Bernstein, and Daniel Bernstein ("the Bernsteins"), by and through their undersigned counsel, The Galbraith Law Firm LLC, submit the instant Opposition to Defendant JPMorgan Chase Bank, N.A.'s ("Chase") April 11, 2025, Motion for Reconsideration of the Court's Order dated March 28, 2025, denying Chase's Motion to Dismiss count six of the Complaint and its request, in the alternative, for certification of an interlocutory appeal ("Motion").

## PRELIMINARY STATEMENT

At its core, Chase's Motion is nothing more than an attempt to re-litigate issues already decided. Chase's mere disappointment with the Court's decision does not provide a basis for reconsideration or immediate appellate review and, therefore, we respectfully submit that the Motion should be denied.

1.  Contrary to Chase's assertions, the Bernsteins have plausibly alleged a "causal nexus" between Chase's conduct and the Bernsteins' injury. As the Complaint details, the Bernsteins relied on Chase's misleading statements regarding its security features, fraud monitoring, and zero liability protection to continue their banking relationship with Chase. And, despite Chase's expressed knowledge of the banking security risks faced by older adults, *see* Ex. A, at p. 7 and Ex. B, at pp. 19-20. Chase allowed hundreds of fraudulent transactions over a lengthy period of time to go through unabated without issuing even one fraud alert to the Bernsteins.

This is not simply a case of "a consumer-facing entity that simply advertises services available to its customers" that has been pulled into a case regarding "a loss to the customer that is untethered to the advertisement in question." *See* Motion at p. 2. Chase is a highly sophisticated bank that attracts customers, including the Bernsteins, with explicit promises to monitor bank and credit card accounts for suspicious activity. The bank then failed to flag hundreds of highly unusual

1

and suspicious transactions in the checking account and credit cards of two elderly customers who were known to rely upon the assistance of its private bankers. But for Chase's failure to provide anything remotely approaching the advertised fraud protection service on the Bernsteins' accounts, they would not have suffered millions of dollars in losses. Under these circumstances, the Court properly ruled that Chase's failure to provide "the fraud protection [the Bernsteins] were allegedly promised … resulted in losses that the Court can infer Plaintiffs would have not sustained to this degree had Chase provided the protection it promised." *See* Ex. C, p. 25.

2. Despite Chase's protestations, the Bernsteins have plausibly alleged that Chase's statements advertising its fraud protection services were materially misleading. As the Court observed, "Chase's website advertises its security features noting that 'older adults in particular are at risk for fraud,' and stating that the bank has '24/7 credit card monitoring' and 'safeguards against suspicious activity.'" *See* Ex. C, p. 22. Against this backdrop, the Court correctly concluded that the Bernsteins "have plausibly alleged that Chase's website is likely to mislead a reasonable consumer into believing that their Chase bank accounts would be insulated from the alleged fraud at issue in this case." *Id.* at p. 24.

## ARGUMENT

### I. THE COURT SHOULD DENY RECONSIDERATION OF CHASE'S MOTION

#### A. Legal Standard

The standard on a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A court will grant reconsideration when a movant demonstrates 'an intervening change of controlling law,

the availability of new evidence, or the need to correct clear error or prevent manifest injustice.'" *Columbo v. Philips Bryant Park LLC*, No. 22-CV-775 (RA), 2025 U.S. Dist. LEXIS 66403 (S.D.N.Y. Apr. 8, 2025) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Griffin Industries, Inc. v. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999). "A party seeking reconsideration 'is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.'" *Lowinger v. Morgan Stanley & Co. LLC (In re Facebook, Inc., IPO Sec. & Derivative Litig.),* 43 F. Supp. 3d 369 (S.D.N.Y. 2014) (internal citations omitted). In other words, a motion for reconsideration "is not a vehicle for … taking a 'second bite at the apple.'" *Griffin,* 72 F.Supp.2d at 368 (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998)). Here, reconsideration is not warranted because Chase has presented neither a change in controlling law nor new evidence and instead just rehashes arguments that this Court has already carefully reviewed and ruled upon.

**B. The Bernsteins' Injury Is A Direct Result Of Chase's Materially Misleading Statements**

Chase's efforts to reargue the purported lack of a "causal nexus" between Chase's materially misleading statements and the Bernsteins' subsequent financial losses are misguided and meritless. *See* Motion at 3-4. To the contrary, as the Court correctly concluded, the Bernsteins plausibly alleged: (i) "they did not receive the fraud protection services Chase misleadingly told Plaintiffs they would receive," (ii) they "relied on this assurance to continue their banking relationship with Chase," and (iii) Chase's "failure resulted in losses that the Court can infer

3

Plaintiffs would have not sustained to this degree had Chase provided the protection it promised." *See* Exhibit C, p. 25.

In seeking reconsideration of this well-reasoned decision, Chase relies on three cases which are clearly distinguishable from this matter and do not offer any support for Chase's position.

1. Chase once again misrelies on *Holmes v. Capital One, N.A.* for the erroneous suggestion that the Bernsteins have not plausibly alleged a causal nexus. *See Holmes v. Capital One, N.A.*, No. 3:22-CV-0823 (GTS/TWD), 2023 U.S. Dist. LEXIS 173632 (N.D.N.Y. Sep. 28, 2023). As the Bernsteins explained in their Opposition to Chase's Motion to Dismiss, the facts in *Holmes* are clearly distinguishable. *See* Ex. B at 20. *Holmes* involved a plaintiff who sent $40 via Zelle to a fraudulent Facebook Marketplace seller. *Holmes* at 3. Zelle completed the requested transfer and later refused to refund plaintiff's money, arguing that a reasonable consumer would not view its marketing as a promise to ensure them freedom from online scams. Unlike this case, plaintiff was unable to show that Zelle did not deliver on its promises. *Id*. at 29-31. Instead, Zelle delivered the money safely and securely to the requested recipient. *Id*. at 30. In this case, Chase made specific assurances that it would monitor credit card activity and safeguard against suspicious activity but did not deliver on its promises. *See* Ex. A at pp. 7-8. The Bernsteins' account showed hundreds of acts of extreme and obvious fraud over the course of many months, and Chase took no action despite its purported 24/7 monitoring and sophisticated fraud detection systems. Chase clearly did not deliver on the promises made in its marketing materials, and this failure is a direct cause of the Bernsteins' monetary loss.

2. Chase's reliance on the brief, one paragraph opinion in *Loeb v. Architecture Work, P.C.*, 154 A.D.3d 616, 62 N.Y.S.3d 787 (App. Div. 1st Dept.) is also misplaced. There, the court noted that the case involved a "private contract dispute unique to the parties" and found that the

4

plaintiff's damages "was a result of specific acts and omissions by the individual defendant, such as failing to provide constructible drawings, re-designing the apartment's windows and doors without authorization, and failing to coordinate the project." Here, unlike *Loeb*, the Bernsteins' losses are causally connected to Chase's consumer-oriented conduct and misleading marketing materials and not its failure to perform under a "private contract unique to the parties."

3.      Chase also once again relies upon *Bibicheff v. PayPal, Inc.* to suggest that Chase should not be held responsible for the Bernsteins' losses. *See Bibicheff v. PayPal, Inc.*, 844 F. App'x 394 (2d Cir. 2021). *Bibicheff* involved an office manager who stole her employer's credit card information and used it to make purchases through PayPal. *Id*. at 397. In *Bibicheff*, the court found "no factual allegations to suggest that PayPal would have detected this fraud, even assuming diligent monitoring of the transactions on its platform." *Id*. Unlike *Bibicheff,* the Bernsteins have set forth ample allegations to plausibly suggest Chase would have detected the fraud had Chase diligently monitored the transactions on its platform and engaged in its promised fraud protection services.  As the Court noted, the Bernsteins alleged that "the pattern of transactions included in the Complaint is a shocking deviation from their typical spending pattern."  *See* Exhibit C, p. 5. The Bernsteins also alleged that despite their historic low usage and balances, Chase allowed hundreds of fraudulent charges to go through month after month during the fraudulent period – to the point the monthly charges in some months were many multiples of the Bernsteins' credit limit – without issuing a single fraud alert.  As such, the Bernsteins have plausibly alleged a causal nexus.

In addition to its misplaced reliance on the above cases, Chase also objects to the Court's invocation of the "lost benefit of bargain" theory for the third prong of the General Business Law ("GBL") § 349 claim. *See* Motion at p. 5. Seeking to unnaturally limit the scope of the lost benefit

5

of the bargain theory, Chase argues that the theory is inapplicable because the Bernsteins do not allege in their Complaint that they paid for any specific service that was not received. This reasoning is unsound. The "lost benefit of the bargain" theory applies here and is not so limited, as this Court sets forth in its Order and cases cited therein. *See* Ex. C at p. 25. The Bernsteins received private banking services at Chase due to their high checking account balance and significant investments and had multiple credit cards with Chase. *See* Ex. A at p. 3, and Ex. B at pp. 2-3. The Bernsteins alleged that they relied upon the high level of service promised in Chase's extensive advertising campaign and would not have entrusted (and continued to use) Chase for their credit card and banking needs if they knew the level of service and protection Chase advertised would not be delivered. *Id.* This is sufficient to plausibly state a claim under GBL § 349. *See, e.g., In re Anthem, Inc. Data Breach* Litigation, 162 F.Supp.3d 953, 995-96 (N.D. Cal. 2016) (finding cognizable GBL §349 injury in a case involving defendants' failure to disclose accurate information about their data security practices).

Finally, Chase again incorrectly claims that the personal assistant had apparent authority. This argument is discussed at length in the Bernsteins' Opposition to the Motion to Dismiss. *See* Ex. B at p. 12. Determining whether apparent authority exists is a question of fact, and the Bernsteins have pled that the personal assistant, who was criminally charged and has recently pled guilty, did not have authority or "act[] within the scope of his employment," as Chase unconvincingly claims. *See* Motion at pp. 6-7. Additionally, the transactions made by the personal assistant were so unusual that Chase had a duty to inquire, as it is well established that a duty to inquire arises when a transaction conducted by a purported agent is so extraordinary that it alerts the third party to the danger of fraud. *See Herbert Constr. Co. v. Cont'l Ins. Co.*, 931 F.2d 989 (2d Cir. 1991).

### C. Chase Made Materially Misleading Statements That Support The Bernsteins' GBL § 349 Claim

Distorting the nature of the Bernsteins' claims and the facts alleged in the Complaint, Chase asserts that "nowhere on the Website does it suggest that Plaintiffs should have been insulated from their assistant taking financial advantage of them while acting within the scope of his employment and managing their affairs. Nor does it make a misleading statement suggesting that Chase will be serving as a conservator or chaperone vis-à-vis an account holder." *See* Motion at pp. 6-7. The Complaint makes no such allegations. The Bernsteins have never suggested that Chase's marketing materials were likely to mislead a reasonable consumer into believing that Chase would act as a conservator or a chaperone. Rather, as the Court correctly found, the crux of Bernsteins' claim is that "Chase's website is likely to mislead a reasonable consumer into believing that their Chase bank accounts would be insulated from the alleged fraud at issue in this case." *See* Exhibit C, p. 24. That alleged fraud did not involve, as Chase erroneously claims, an assistant simply taking advantage of the Bernsteins while working within the scope of his employment. To the contrary, the Complaint specifically alleges that the assistant "was not authorized to use the Bernsteins' credit cards nor knowingly given access to any banking account" and the Bernsteins "maintained possession of their … Chase cards" throughout the relevant time period. *See* Exhibit A, p. 4. Instead, the fraud at issue in this case was obvious and shocking and involved hundreds of fraudulent transactions in excess of millions of dollars that were processed by Chase on nearly a daily basis for almost a year even though the transactions "were wildly divergent from the Bernsteins' typical spending patterns." *See* Exhibit A, p. 2.

The Bernsteins, like any reasonable consumer would have been, were misled into expecting that Chase's "24/7 credit card fraud monitoring," "sophisticated security tools," and

"zero liability protection" would have alerted Chase to this grossly divergent pattern of fraudulent transactions, but Chase failed to provide even the most basic protections.

In making its argument, Chase relies upon *Yuille*, a case in which an elderly man lost money on a crypto platform during an isolated event. *See Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323 (S.D.N.Y. 2023). The Court clearly already considered the *Yuille* case (as it was cited in the Order and Opinion at p. 18) and properly rejected Chase's position. In *Yuille,* the plaintiff alleged that the defendant platform engaged in deceptive acts, including misrepresenting the safety and security of its accounts and failing to protect the plaintiff's assets and information. *Id.* at 344. Unlike the statements at issue here, the court found that some of the defendant's statements were mere puffery. The court also found that the plaintiff failed to show that statements about the defendant's security systems were false, because "the allegations made by Plaintiff – that a single account (Plaintiff's own) was compromised and that Defendant failed to respond sufficiently timely to an outside attack – do not demonstrate that the impression was false when [defendant] communicated that impression to consumers". *Id.* at 346. In stark contrast, this case does not involve an isolated security failure. Rather, despite Chase's "extensive marketing campaign extolling its superior customer service and fraud protections," *see* Exhibit A, ¶28, and its knowledge of the vulnerability of its elderly customers, Chase failed to detect not one, but *hundreds*, of obviously-fraudulent transactions across multiple days, weeks, and months for nearly a full year. This massive and repeated systematic failure is sufficient to plausibly allege that Chase's statements were misleading.

## II. INTERLOCUTORY APPEAL

### A. Legal Standard

8

Alternatively, Chase asks the Court to certify its Order for interlocutory review under 28 U.S.C. 1292(b). "Interlocutory appeals are strongly disfavored in federal practice. Movants cannot invoke the appellate process as a vehicle to provide early review of difficult rulings in hard cases. Only exceptional circumstances will justify a departure from the basic policy of avoiding appellate review until a final decision on the merits." *Ret. Bd. Of the Policemen's Annuity & Ben. Fund of Chi. V. Bank of N.Y. Mellon*, 2016 U.S. Dist. LEXIS 61483 *3 (S.D.N.Y. May 9, 2016) (citing *Glatt v. Fox Searchlight Pictures Inc.*, No. 11-cv-6784 (WHP), 2013 U.S. Dist. LEXIS 139594, 2013 WL 5405696, at *1 (S.D.N.Y. Sept. 17, 2013)). Moreover, "even where the three legislative criteria of section 1292(b) appear to be met, district courts have 'unfettered discretion to deny certification' if other factors counsel against it." *Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350-351 (S.D.N.Y. 2005) (internal citations omitted). There are no exceptional circumstances present in this case, and multiple factors counsel against interlocutory appeal.

### B. There Is No Substantial Ground For Difference Of Opinion Regarding A Controlling Question Of Law

There is no question of controlling law in this case or exceptional circumstances that would warrant the immediate appellate review of the Court's decision. "The question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Hunter v. Debmar-Mercury LLC*, 2024 U.S. Dist. LEXIS 2943 (S.D.N.Y. Jan. 5, 2024) *5-6 (internal citations omitted). Chase relies heavily on *Hunter* to claim that an issue of controlling law exists here. Yet in *Hunter*, the issue of controlling law involved the definition of "marital status" in the NYCHRL. The court in *Hunter* held that it was "constrained to follow" a decision of the First Department regarding that definition even though it disagreed with the analysis. Under those circumstances, the court felt that interlocutory appeal would be appropriate

9

because the discrete legal issue was a "sufficiently plausible candidate for a certified question" to be sent from the Second Circuit to the Court of Appeals.

Here, the Bernsteins state that they relied on Chase's advertised fraud protection services, Chase did not deliver those services, and the Bernsteins have suffered injury. Chase takes issue with the Court's application of GBL § 349 to the alleged facts. In *Abortion Rights Mobilization, Inc. v. Regan*, the court found that an interlocutory appeal under § 1292(b) was not appropriate for early resolution of disputes "concerning whether the trial court properly applied the law to the facts." *Abortion Rights Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982) (internal citations omitted). The court went on to explain, "(t)he question concerning plaintiffs' standing which the government seeks to have certified for review does not concern a dispute or disagreement as to the applicable law, but instead it involves whether the court's application of the decided and governing case law to the relevant facts is appropriate. I do not believe such issues were intended for certification under § 1292." *Id*. Similarly, Chase asks this court to certify an order for review, but the order does not concern a dispute over the applicable law. Chase takes issue with the court's application of decided and governing case law, which is not an issue intended for certification under § 1292.

### C. An Immediate Appeal Would Not Materially Advance The Ultimate Termination Of The Litigation

An appeal would waste time on an issue that has already been decided by this Court, and fairness dictates that the Bernsteins should be allowed to prosecute GBL § 349 claims.

### CONCLUSION

The Court, in its March 28, 2025, Order, clearly articulates its reasoning for denying the Motion to Dismiss, and along with the reasons detailed herein, we respectfully request that the Court (1) deny Defendant's Motion for Reconsideration; (2) reaffirm the Court's March 25, 2025,

10

Order denying in part Defendant's Motion to Dismiss the Complaint; and (3) award Plaintiffs the costs and fees associated with responding to Defendant's baseless Motion for Reconsideration.

Dated: New York, NY
      May 2, 2025

                                      Respectfully submitted,

                                      THE GALBRAITH LAW FIRM

                                      *Abigail Prinn*
                                      _____
                                      Abigail Prinn, Esq.
                                      Kevin D. Galbraith, Esq.
                                      Two Waterline Square
                                      400 West 61st Street, Suite 1508
                                      New York, NY 10023

                                      *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 2, 2025, a true and correct copy of the foregoing was served by my office to:

Sylvia E. Simson, Esq.
Ryan Sirianni, Esq.
Sean O'Bryan, Esq.
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200
Sylvia.Simson@gtlaw.com
Ryan.Sirianni@gtlaw.com
Sean.OBryan@gtlaw.com

*Counsel for Defendants*
*JPMorgan Chase Bank, N.A.*
(By ECF and Email)

 

Respectfully submitted,

THE GALBRAITH LAW FIRM

/s/ Megan Craig
Megan Craig
Two Waterline Square
400 West 61st Street, Suite 1508
New York, NY 10023

*Counsel for Plaintiffs*