UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAPHAEL BERNSTEIN, et al.,

                          Plaintiffs,

        -against-

JPMORGAN CHASE BANK, N.A., et al.,

                          Defendants.

24-CV-3552 (JGLC)

**<u>OPINION AND ORDER</u>**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiffs Raphael Bernstein, Jane Bernstein, John Bernstein, and Daniel Bernstein (collectively, "Plaintiffs"), bring this action against JPMorgan Chase Bank, N.A. ("Defendant" or "Chase"), American Express National Bank, and Bank of America, N.A.[1] (collectively, "Defendants" or "Banks"), alleging that the Banks violated their own policies and promises by failing to alert Plaintiffs of fraud in violation of the Truth in Lending Act, 15 U.S.C.S. § 1601 *et seq.*; the Uniform Commercial Code Articles 4 and 4A; the Electronic Fund Transfer Act, 15 U.S.C.A. § 1693; and New York General Business Law ("GBL") § 349. *See* ECF No. 1-1 ("Compl.") ¶¶ 67–103. Plaintiffs also asserted a claim for negligent misrepresentation. *Id.* ¶¶ 55–66. On June 7, 2024, Defendant Chase filed a motion to dismiss Plaintiffs' complaint in its entirety. ECF No. 20. On March 28, 2025, the Court issued an Opinion and Order that granted Chase's motion with respect to Plaintiffs' negligent misrepresentation, Truth in Lending Act, Uniform Commercial Code, and Electronic Fund Transfer Act claims. ECF No. 38 ("Order"). However, the Court denied Chase's motion to dismiss Plaintiffs' state law consumer protection

---

[1] On June 14, 2024, the parties stipulated to substitute named Defendants JPMorgan Securities d/b/a JPMorgan Chase, JPMorgan Securities d/b/a JPMorgan Private Bank, and JPMorgan Chase & Co. with Defendant JPMorgan Chase Bank, N.A. *See* ECF No. 27. All proceedings in this matter related to American Express National Bank are stayed pending completion of arbitration deadlines. *See* ECF No. 23.

claim, finding that Plaintiffs adequately alleged an injury under GBL § 349. *Id.* at 21–25. Currently before the Court is Chase's Limited Motion for Reconsideration, or in the Alternative, for Certification as to an Interlocutory Appeal. ECF No. 39. Defendant Bank of America, N.A. did not bring a separate motion for reconsideration or join Chase's motion. Chase moves to reconsider the Court's denial of its motion to dismiss Plaintiffs' GBL § 349 claim, but does not seek reconsideration of the rest of the Court's Order. *See* ECF No. 40 ("Mot."). For the reasons set forth below, Chase's motion is DENIED in its entirety.

**DISCUSSION**

The Court assumes familiarity with the facts as set forth in the Order on the motion to dismiss. *See* Order at 2–7.

**I.   Chase's Motion for Reconsideration is Denied**

The Court sets forth the legal standards governing motions for reconsideration and concludes that Chase has not met these rigorous standards.

**A.  Legal Standard**

S.D.N.Y. Local Civil Rule 6.3 dictates that any motion for reconsideration shall be based upon "the matters or controlling decisions which the moving party believes the court has overlooked." The rule "is to be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly construed by the court." *Lent v. Fashion Mall Partners, L.P.*, 243 F.R.D. 97, 98 (S.D.N.Y. 2007) (internal citation omitted). In other words, a motion for reconsideration will generally be "denied unless the moving party can point to controlling decisions or data that the court overlooked [and] that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (cleaned up). "[A] motion to reconsider should not be

2

granted where the moving party seeks solely to relitigate an issue already decided." *Id.* (affirming a district court's decision to reconsider its earlier ruling when the movant introduced "additional relevant case law and substantial legislative history"). "The standard for reconsideration is strict and the decision is 'within the sound discretion of the district court.'" *Robbins v. H.H. Brown Shoe Co.*, No. 08-CV-6885 (WHP), 2009 WL 2496024, at *1 (S.D.N.Y. July 27, 2009) (citing *Colodney v. Continuum Health Partners, Inc.*, No. 03-CV-7276 (DLC), 2004 WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004)).

### B.  Chase Does Not Satisfy the Rigorous Standard Governing Reconsideration

In its Order, the Court held that Plaintiffs adequately pled their GBL § 349 claim. Order at 21–25. GBL § 349(a) declares as unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York. To state a Section 349 claim, plaintiffs must plead "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered an injury as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (internal citation omitted). The Court concluded that Chase's alleged conduct, including an extensive marketing campaign, was consumer-oriented conduct. Order at 22–23. The Court further determined that Chase's alleged conduct was plausibly materially misleading and caused Plaintiffs' injury. *Id.* at 23–24. Chase moves the Court to reconsider its ruling on the latter two elements, arguing that Plaintiffs did not establish that Chase's representations were materially misleading conduct or that its conduct caused Plaintiffs' injury. Mot. at 3–8.

3

### 1. Chase's Consumer-Oriented Conduct Includes Both Its Website Representations and Its Emailed Assurance

Chase does not directly contest the Court's analysis of the first element of the Section 349 claim, which is that Chase's conduct was consumer-oriented. *See* Mot. However, determining exactly which aspects of Chase's conduct were consumer-oriented informs the analysis of the latter two elements of the claim, which Chase moves to reconsider.

In the Order, the Court held that Plaintiffs "sufficiently ple[d] materiality" with their allegations of Chase's website content *and* emailed "personal assurance." Order at 24 (internal citation omitted). Chase argues that its emailed assurance to Plaintiffs "was not publicly disclosed and thus cannot plausibly be viewed as consumer-oriented conduct." Mot. at 6 n.4. To support its contention, Chase cites to the Court's Order stating that consumer-oriented conduct must have a "broader impact on consumers at large." *Id.* (quoting Order at 22 (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014))).

The Court disagrees with Chase's contention that communications must be publicly disclosed to constitute consumer-oriented conduct under Section 349. Non-publicly disclosed conduct directed at an individual consumer could give rise to a Section 349 claim, if that "boilerplate" conduct was one instance of a more generally applied policy or practice that could "potentially affect[] similarly situated consumers" or has "the potential to be repeated in order to deceive numerous similarly situated buyers." *Seidler v. JPMorgan Chase Bank, N.A.*, No. 23-CV-1462 (GHW) (VF), 2024 WL 344551, at *4 (S.D.N.Y. Jan. 12, 2024) (internal citations omitted), *report and recommendation adopted*, No. 23-CV-1462 (GHW), 2024 WL 343299 (S.D.N.Y. Jan. 30, 2024). *See also Orlander v. Staples, Inc.*, 802 F.3d 289, 301 (2d Cir. 2015) (vacating a district court's grant of a motion to dismiss a Section 349 claim where the consumer-oriented conduct

was a defendant's contract with a consumer and "oral assurances" to the consumer by the defendant's employee).

Here, Plaintiffs allege that on July 11, 2019, approximately three years prior to the fraud at issue, a "managing director from JP Morgan Private Bank" emailed Daniel Bernstein and his assistant, who were acting on behalf of all Plaintiffs. Compl. ¶ 29. Chase's managing director assured Plaintiffs that it would "reimburse clients for losses on their accounts that are a result of unauthorized access to our systems through no fault of their own." *Id.* Although Plaintiffs do not specifically plead that this correspondence was "based on a script or boilerplate template," *Seidler*, 2024 WL 344551, at *5, the email is consistent with Plaintiffs' allegations regarding Chase's "extensive advertising campaigns concerning their . . . zero liability protections."; Compl. ¶ 98. Therefore, at this early state of the litigation, it is at least plausible that Chase's email is a communication regarding a policy (zero liability protection) that is generally applicable to the public. It also is plausible, as alleged, that Chase communicated the same message to similarly situated customers. Therefore, in addition to its website content, Chase's email constitutes consumer-oriented conduct under a Section 349 claim.

### 2. Plaintiffs Have Sufficiently Pled the Materially Misleading Element

As to the second element, Chase asserts that Plaintiffs have not adequately pled that Chase's website and emailed assurance are likely to mislead a reasonable consumer. Mot. at 6.

Plaintiffs bringing Section 349 claims must plead that a defendant's consumer-oriented deception was material under a "reasonable consumer" standard. *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021). Therefore, to survive a motion to dismiss, "a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir.

5

2018) (internal quotation marks and citation omitted). In contrast, mere puffery cannot form the basis of a Section 349 claim. *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023). Mere puffery is either "(1) subjective statements that cannot be proven true or false and are therefore non-actionable puffery as a matter of law and (2) objective statements that can be proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on them." *Id.* (citing *Int'l Code Council v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022)).

At the motion to dismiss stage, concluding as a matter of law that conduct was not materially misleading "is appropriate only if Plaintiffs' claims are patently implausible or unrealistic." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 95 (S.D.N.Y. 2021) (internal quotation marks and citation omitted). "[T]his inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of America, Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (collecting cases).

In the present motion and reply, Chase cites only *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323 (S.D.N.Y. 2023), which is persuasive authority. *See* Mot. at 8, ECF No. 50 at 1. In *Yuille*, the court concluded that certain statements by a cryptocurrency exchange platform, including "[s]ecurity is in our DNA" and "[s]ecurity is built into our systems and culture," were mere puffery. 686 F. Supp. 3d at 344–45. The court held that these statements were not "specific enough to be falsifiable," and a reasonable customer would not have "relied on those statements to understand either that [Chase] had built specific security systems into its platform or that the [plaintiff's account] would be immune to attacks by third-party hackers." *Id.* at 345 (quoting *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 366–67 (S.D.N.Y. 2021)). In contrast, though it ultimately dismissed the Section 349 claim on other grounds, the court concluded that the *Yuille* defendant's other, "more specific statements" that defendant deploys "layered defenses to limit

6

the scope and depth of potential attacks" and "monitors systems year-round and responds immediately to any detected threat" were not puffery. 686 F. Supp. 3d at 345.

Here, like the more specific statements in *Yuille*, Plaintiffs have sufficiently pled that Chase made specific and falsifiable representations, though not all of the statements at issue are material misrepresentations. Plaintiffs pled that "Chase's website advertises its security features and specifically states that 'older adults in particular are at risk for fraud.' It further describes the security features including '24/7 credit card monitoring' and 'safeguards against suspicious activity.'" Compl. ¶ 28 (footnotes omitted). Plaintiffs alleged more generally that Chase conducted an "extensive advertising campaign[] concerning [its] sophisticated fraud monitoring and zero liability protections." *Id.* ¶ 98. Additionally, as discussed above, Chase's managing director emailed Plaintiffs that Chase would "reimburse clients for losses on their accounts that are a result of unauthorized access to our systems through no fault of their own." *Id.* ¶ 29. Plaintiffs claim that these statements were misleading by alleging that despite Chase's personal assurance and "extensive advertising campaign, [Plaintiffs] did not receive even the most basic of promised fraud alerts after highly suspicious use of their account and credit cards." *Id.* ¶ 30.

Taking the statements one by one, Chase's statement that "older adults in particular are at risk for fraud" is simply a statement of fact and is not a representation about Chase or its services. *Id.* ¶ 28. In contrast, Chase's statements that it provides "24/7 credit card monitoring" and "safeguards against suspicious activity" are specific and falsifiable. *Id.* Similarly, Chase's zero liability protections advertisement campaign, coupled with Chase's emailed reassurance that it would reimburse clients for no-fault losses, are representations about Chase's services and policies. Chase's statements about its fraud protections and liability policies "are both provable

7

and not so patently hyperbolic that any allegations that it misled consumers are facially implausible." *MacNaughton*, 67 F.4th at 97 (internal citation omitted).

Additionally, Chase directs the Court to contextualizing language on Chase's website, which Plaintiffs quote only partially in their Complaint. Mot. at 11–12. *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) (internal citation omitted) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole."). Specifically, Chase highlights language describing how older adults can prevent financial abuse, how customers can use Chase's digital application and website to review and secure their accounts, and Chase's request that unauthorized transactions be immediately reported. Mot. at 7–8. However, this contextual language that Chase highlights would not deter a reasonable customer from believing that Chase offers adequate fraud alerts and zero liability protections. Although the language cautions and advises customers to keep aware of fraud and utilize Chase's digital tools, it does not disclaim Chase's security protections.

Furthermore, Chase exaggerates Plaintiffs' pleadings by claiming that Plaintiffs argue that Chase's representations "suggest complete insulation from any fraud." Mot. at 8. Rather, Plaintiffs more narrowly allege that Chase's statements led them to believe that they "would be contacted about [the years-long fraudulent] activity" and receive "basic" fraud alerts. Compl. ¶¶ 27, 30. Chase's website and emailed assurance could plausibly lead a reasonable customer to believe that Chase would flag the fraud at issue, and if those protections faltered, that Plaintiffs would face zero liability for the unauthorized payments. Plaintiffs have pled that Chase did not protect against, or send an alert regarding, the fraud at issue, and that Plaintiffs have faced liability for the unauthorized payments. Compl. ¶¶ 27, 30, 52–54. Therefore, at this motion to dismiss stage, Plaintiffs have sufficiently pled that Chase's representations were materially

misleading under Section 349. Chase does not point to controlling caselaw that requires this Court to dismiss Plaintiffs' claim, nor does it identify clear error, especially in light of the permissive pleading standard for this element at the motion to dismiss stage.

### 3. Plaintiffs Have Sufficiently Pled Injury as a Result of Chase's Conduct

Chase also moves the Court to reconsider its analysis of the third element, arguing that Plaintiffs have failed to sufficiently plead causation. In bringing a Section 349 claim, a plaintiff must plead that it "suffered injury as a result of the allegedly deceptive act or practice." *Orlander*, 802 F.3d at 300 (internal citation omitted). Chase argues that because Plaintiffs' assistant, a third party, was directly responsible for Plaintiffs' loss, Plaintiffs cannot establish the "'causal nexus' between Chase's alleged [w]ebsite statements and the [e]mail and Plaintiffs' alleged 'monetary loss.'" Mot. at 2 (quoting *Holmes v. Cap. One, N.A.*, No. 22-CV-823 (GTS/TWD), 2023 WL 6318883, at *11 (N.D.N.Y. Sept. 28, 2023)).

Although third-party intervening criminal acts generally sever the causal connection between a defendant's conduct and the plaintiff's injury, this is not so where, as here, Chase's advertisements contemplated the very criminality at issue and promised protection against it. Under New York tort law, "[g]enerally, an intervening intentional or criminal act is a type of superseding cause that severs the liability of the original tort-feasor[,] where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an independent decision that results in harm to the victim, including an intentional or criminal act by a third party, the chain of causation will not be considered broken." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 161–62 (S.D.N.Y. 2009) (internal citations and quotation marks omitted). This same causation analysis also applies to Section 349 claims. *See Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 372 (S.D.N.Y. 2021) (applying a tort-law causation analysis to a Section 349 claim in holding that a third party's foreseeable criminal conduct did not sever causation). In *Doe*, the

plaintiff sufficiently alleged that the defendant rideshare company's misrepresentations about the safety of its rides "concealed a foreseeable risk covering sexual assault of a rider by a driver, which then materialized." *Id.* Similarly, as occurred here, Chase's representations anticipated the risk of fraud and promised fraud alerts and liability protections, so a third party's foreseeable fraud does not sever causation.

Further, Chase argues that application of the "lost benefit of the bargain" theory is inappropriately applied to these facts. Mot. at 5–6. The Court disagrees. As mentioned above, Plaintiffs plead that they relied on Chase's representations about its fraud protections and zero liability policy in continuing their relationship with Chase. *See* Compl. ¶¶ 29–30, 100. Specifically, Plaintiffs allege that years prior to the fraud at issue, Plaintiffs were "concerned about cybersecurity," and after "proactively contact[ing]" Chase in 2019, Plaintiffs "relied on [Chase's] personal assurance, along with the extensive marketing campaign, to continue their financial relationship with" Chase. Compl. ¶ 29. Therefore, at this stage of the proceedings, Plaintiffs have sufficiently pled that they continued their relationship with Chase only because of Chase's assurances and otherwise "would have taken their business elsewhere" to obtain the advertised fraud and liability protections. *Id.* ¶ 100.

Chase also argues that it is not responsible for Plaintiffs' injury because Plaintiffs' former assistant had "apparent authority." Mot. at 5–6. Chase argues that the apparent authority arose from Plaintiffs' continued payments of their Chase account, made while Chase sent Plaintiffs itemized account statements including the fraudulent charges. Mot. at 6 n.3. "The existence of apparent authority is normally a question of fact . . . . [A] principal may be estopped from denying apparent authority if (1) the principal's intentional or negligent acts, including acts of omission, created an appearance of authority in the agent, (2) on which a third party reasonably

and in good faith relied, and (3) such reliance resulted in a detrimental change in position on the part of the third party." *Minskoff v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996) (internal citations omitted). Chase cites *Minskoff*, which in the Truth in Lending Act context held that a "cardholder's failure to examine credit card statements that would reveal fraudulent use of the card constitutes a negligent omission that creates apparent authority for charges that would otherwise be considered unauthorized." *Id.* at 709–10.

Plaintiffs respond by invoking the "the duty of inquiry" which "nullif[ies] the doctrine of apparent authority" only when "the facts and circumstances are such as to put [a third party] on inquiry, [because] the transaction is extraordinary, or the novelty of the transaction alerts the third party to the danger of fraud." *Herbert Const. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 996 (2d Cir. 1991) (internal citations and quotation marks omitted); ECF No. 49 at 6. Here, Plaintiffs allege that according to Plaintiffs' Chase credit card statements, "[t]he deviation [of the fraudulent spending] from [Plaintiffs'] typical spending pattern is shocking in its audacity and clearly points to fraudulent activity." Compl. ¶¶ 16–18. Plaintiffs allege that they were "long-time customers of Chase," and the fraudulent purchases showed "a huge deviation from their normal spending habits during this period." *Id.* ¶ 14–15. *See also id.* ¶¶ 26–27 (contrasting Plaintiffs' established spending patterns with the fraudulent transactions). Considering that apparent authority is a question of fact generally unsuited for determination at the motion to dismiss stage, and viewing the well-pled facts in the light most favorable to Plaintiffs, the Court does not at this time find that Plaintiffs' former assistant possessed apparent authority sufficient to sever the causal connection underlying Plaintiffs' Section 349 claim.

Chase also cites several cases of persuasive authority. However, these cases are distinguishable from the facts at hand. *See Holmes v. Cap. One, N.A.*, 2023 WL 6318883, at *11

11

(N.D.N.Y. Sept. 28, 2023) (dismissing a Section 349 claim because the defendant digital platform exchange did not advertise fraud protection and specifically disclaimed that it did not "offer a purchase protection program"); *Loeb v. Architecture Work, P.C.*, 62 N.Y.S.3d 787, 787 (1st Dep't 2017) (dismissing a Section 349 claim when the underlying facts involved "essentially a private contract dispute unique to the parties" and the defendant's statements "were mere puffery"). *Compare Bibicheff v. PayPal, Inc.*, 844 F. App'x 394, 397 (2d Cir. 2021) (summary order) (stating that a plaintiff failed to plead the causation prong when "the complaint sets forth no factual allegations to suggest that [defendant] PayPal would have detected this fraud") *with* Compl. ¶¶ 14–15, 26–27 (pleading that a "review of [Plaintiffs'] historical purchasing patterns clearly shows a huge deviation from their normal spending habits during this period[,]" as Plaintiffs "were also long-time customers of Chase," had a clear pattern of banking with low monthly balances on their credit cards," and the "pattern of transactions is obviously suspicious and differs dramatically from the [Plaintiffs'] typical usage of the card").

Therefore, Chase has not identified a clear error of law or controlling caselaw that requires the Court to grant reconsideration of its prior causation analysis. The Court denies Chase's limited motion to reconsider its Order.

## II.    Chase's Request that the Court Certify Its Order for Interlocutory Appeal Is Denied

Finally, Chase asks the Court to certify its Order for interlocutory appeal. Mot. at 8–10. "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order." 28 U.S.C. § 1292(b). Therefore, certification of an interlocutory order for immediate

12

appeal "is only appropriate if the district court determines: '(1) that such order involves a controlling question of law; (2) as to which there is a substantial ground for difference of opinion; and (3) that an immediate appeal from that order may materially advance the ultimate termination of the litigation.'" *Aldana v. GameStop, Inc.*, No. 22-CV-7063 (LTS), 2024 WL 3104345, at *1 (S.D.N.Y. June 24, 2024) (quoting *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014)) (cleaned up). "The moving party has the burden of establishing all three elements." *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017) (internal citation omitted).

"Only exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Liberty Mut. Ins. Co. v. The Fairbanks Co.*, 208 F. Supp. 3d 545, 546 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). Indeed, "interlocutory appeals are 'strongly disfavored.'" *Flynn v. Cable News Network, Inc.*, 621 F. Supp. 3d 432, 441 (S.D.N.Y. 2022) (quoting *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010)). "Even if [parties] could meet the statutory criteria here, district court judges have broad discretion to deny certification," and a "basic tenet of federal law is to delay the appellate review until a final judgment." *Shinano Kenshi Corp. v. Honeywell Int'l Inc.*, No. 22-CV-3704 (LGS), 2024 WL 245985, at *5 (S.D.N.Y. Jan. 23, 2024) (internal citations and quotation marks omitted).

First, here, there is no controlling question of law at issue, but rather a difference of opinion in application of law to fact. "A Section 1292(b) appeal requires a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Facebook*, 986 F. Supp. 2d at 536 (internal citation and quotation marks omitted). "[Q]uestions regarding application of the appropriate law to the relevant facts are generally not

suitable for certification under § 1292(b)." *Id.* (internal citation omitted). "The antithesis of a proper Section 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.* (citing *Mills v. Everest Reins. Co.*, 771 F. Supp. 2d 270, 275–76 (S.D.N.Y. 2009)).

Chase argues that Plaintiffs' Section 349 claim turns on a question of law asking: "whether Plaintiffs can establish the injury element of their claim against Chase where they have alleged they relied upon Chase advertising to maintain their accounts but also conceded in their pleading that their financial loss came from the actions of a non-party former employee, not Chase." Mot. at 9. However, Plaintiffs' claim relies on fact-specific allegations and requires the Court to analyze the specific representations Chase made on its website and in its email to Plaintiffs. Additionally, Plaintiffs' claim requires the Court to inquire into the facts of the underlying fraud, as both Plaintiffs and Chase raise arguments regarding the severity and obviousness of the fraud, and whether Plaintiffs' former assistant possessed apparent authority over Plaintiffs' Chase accounts. *See* Mot. at 6; ECF No. 49 at 6; ECF No. 50 at 3. Therefore, the first element weighs against certification of an interlocutory appeal.

Second, there is not substantial ground for difference of opinion as to this claim. "Substantial ground for a difference of opinion requires more than a claim that the court's ruling was wrong. Similarly, simply because a question is particularly difficult does not mean that there is a difference of opinion." *U.S. ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010) (internal citations omitted). Further, "in determining whether a substantial ground for difference of opinion truly exists, a district court must analyze the strength of the arguments in opposition to the challenged ruling." *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 398 (E.D.N.Y. 2003) (internal citations and quotation marks omitted). "Where, as here, the cases

cited are either inapposite to the issue implicated by the instant action, of no persuasive authority, or both, no substantial ground for difference of opinion exists." *Id*. Here, the Court's review of the parties' cited caselaw fails to convince that a substantial ground for difference of opinion exists as to the question presented, particularly when considering the fact-intensive nature of Plaintiffs' Section 349 claim.

Third, it is true that an interlocutory appeal in favor of Chase "may materially advance the ultimate termination of the litigation," by resulting in the dismissal of Plaintiffs' last remaining claim. 28 U.S.C. § 1292(b). However, "obtaining reversal of an opinion denying a motion to dismiss will *always* contain the possibility of a dismissal and is not an exceptional circumstance that justif[ies] a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Facebook*, 986 F. Supp. 2d at 531 (internal citation and quotation marks omitted).

Further, Chase argues that the Order may open the floodgates of litigation, with defrauded customers challenging banks' fraud protection advertisements, such that interlocutory appeal could "conserve judicial resources in the longer term by resolving important and oft-arising legal questions." *Islam v. Lyft, Inc.*, No. 20-CV-3004 (RA), 2021 WL 2651653, at *5 (S.D.N.Y. June 28, 2021); ECF No. 50 at 4. However, this contention is not well-supported, and indeed, the Court finds it notable that Defendant Bank of America, another bank that would likely have a similar concern, did not bring a motion for reconsideration or join in Chase's motion. Additionally, Chase does not argue that litigation of this type is ubiquitous, nor that there is widespread fraud giving rise to Section 349 claims. *See* Mot. at 10.

Therefore, Plaintiffs' application for certification for interlocutory appeal is DENIED.

## CONCLUSION

For the reasons stated herein, Chase's Motion for Reconsideration is DENIED, and

Chase's request that the issue be certified for interlocutory appeal is DENIED.

The parties are hereby ORDERED to jointly file a letter and proposed Civil Case

Management Plan and Scheduling Order, as described at ECF No. 8, by January 12, 2026.

The Clerk of Court is respectfully directed to terminate ECF No. 39.

Dated:  December 29, 2025
        New York, New York

                                    SO ORDERED.

                                    _Jessica Clarke_
                                    _____

                                    JESSICA G. L. CLARKE
                                    United States District Judge