**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAPHAEL BERNSTEIN, JANE BERNSTEIN, JOHN BERNSTEIN, and DANIEL BERNSTEIN, <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., AMERICAN EXPRESS NATIONAL BANK, and BANK OF AMERICA, N.A., <br><br> Defendants. | Case No. 1:24-CV-03552-JGLC |

**STIPULATION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI STIPULATION" OR "ESI ORDER")**

All four Plaintiffs, JPMorgan Chase Bank, N.A. ("Chase"), and Bank of America, N.A. ("BofA," and with Plaintiffs and Chase, the "Parties") HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action (the "Action"). Nothing in this Stipulation is intended to limit any of the Parties' rights under or prevent any party from asserting any objection to production consistent with, the Federal Rules of Civil Procedure, the Local Civil Rules for the Southern District of New York, and/or any other applicable law.

1. GENERAL.

1.1 The Parties shall take reasonable steps to comply with the procedures set forth in this ESI Stipulation.

1.2 This ESI Stipulation is intended to streamline production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

1.3　　To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this ESI Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules for the Southern District of New York, the Court's Individual Rules and Practices, and any orders by this Court.

1.3.1. Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation. In the event of transfer to other courts, this ESI Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.

1.3.2. This ESI Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules for the Southern District of New York, the Court's Individual Rules and Practices, and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.

1.3.3. Subject to this ESI Stipulation and the Parties' objections and responses to requests for production of documents and/or interrogatories, as may be applicable, all documents that are responsive to discovery requests and not designated as "privileged" or otherwise exempted from production shall be produced in the manner provided herein. Nothing in this ESI Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, Confidential Supervisory Information ("CSI") or Suspicious Activity Report ("SAR") privileges, or any other privilege or immunity that may be applicable. Additionally, nothing in this ESI

Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

1.3.4.   The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this ESI Stipulation.  To the extent compliance with this ESI Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly meet and confer in an effort to resolve the issue.

1.3.5.   Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail), and/or by telephone, teleconference or videoconference, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

1.3.6.   Discovery concerning the preservation and collection efforts of another Party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter.  If there is a dispute concerning the scope of a producing Party's preservation or collection efforts, the burden is on the receiving Party to fully explain their reasons for believing that additional efforts are reasonable and proportionate.  In particular, before initiating discovery about preservation and collection, a Party shall confer with the other Party concerning the specific need for such discovery, including its relevance to claims and/or defenses, and the suitability of alternative means for obtaining the information.  Discovery

into such matters may be compelled only on a showing of good cause considering at least the aforementioned factors.

2.     FORMAT OF PRODUCTION – PAPER DOCUMENTS.  At the producing Party's discretion, hardcopy documents should be scanned as PDF format or single-page, black and white, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: ["BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN."] The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business.  If an original document contains color, it need not be produced in color in the first instance.  However, the producing Party will honor reasonable requests for a color image, if a color image is necessary to understand the meaning or content of the document.

3.     FORMAT OF PRODUCTION – UNSTRUCTURED ESI.

3.1     Except as provided in Section 4, all unstructured ESI shall be produced as single-page, black and white, Group 4 TIFF images at 300 x 300 dpi resolution.  If an original document contains color, it need not be produced in color in the first instance.  However, the producing Party will honor reasonable requests for a color image, if a color image is necessary to understand the meaning or content of the document.

3.2     An image load file in standard format identifying the Bates number of each page, the appropriate unitization of the documents, and the entire family range, will accompany each TIFF document.

3.3    No Party will have any obligation to manually generate information to populate any of the metadata fields.  Specifically, the Parties will produce the metadata fields specified in Appendix A for e-mail, Microsoft Word, Microsoft Excel, Adobe PDF, and other electronic documents.

4.    PRODUCTION OF NATIVE FILES.

4.1    The Parties agree that spreadsheets (including Microsoft Excel), CSV, audio, and video files will be produced in native format. This may not constitute a complete list of files for native production and does not preclude the Parties from producing other files natively where appropriate.

4.2    If files to be produced in native format require redaction, the producing Party may use industry acceptable software to implement native redactions.  If no industry acceptable software exists to implement native redactions to a type of file, the Parties shall meet and confer.  Additionally, the Parties may meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.  Any produced native file will be named according to its Bates number.

4.3    If a file is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidentiality designation (if any) and text stating the file has been produced in native format should also be provided.

5.    PRODUCTION OF STRUCTURED ESI.  To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information that is contained in a database and maintained therein in the ordinary course of business, the producing party will be responsible for determining the appropriate and cost-effective production format, which may include an export of data, creating screenshots or copies with an appropriate

description and/or legend so that the receiving Party can properly understand what is being produced, or some other reasonable means.  The producing Party should remain available to meet and confer with the receiving Party if additional follow-up is needed after such production.

6.    <u>PRODUCTION – HANDLING COMPLETELY NON-RESPONSIVE DOCUMENTS ATTACHED TO PRODUCTION ELIGIBLE DOCUMENTS</u>.  In an effort to avoid unnecessary expense and burden, the parties agree that completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing text stating the document has been withheld as non-responsive.  When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

7.    <u>FORMAT OF PRODUCTION – PREVIOUSLY PRODUCED DOCUMENTS</u>. To the extent any Party is required or agrees to re-produce documents in this action that originally were produced in other cases or government investigations, such documents may be produced in the same format in which they were originally produced regardless of whether that format  complies with the specifications provided in this ESI Stipulation.

8.    <u>METHOD OF PRODUCTION</u>.

8.1    Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  A production by secure file transfer shall be considered complete when made available to the receiving Party.

8.2    To maximize the security of information in transit, any media on which documents are produced shall be encrypted by the producing Party.  In such cases, the producing

6

Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with the encrypted media.

        9.     PROCESSING AND OTHER SPECIFICATIONS.

        9.1     Bates Numbers & Branding.  Each page of a produced image shall have a legible, unique Bates number that includes an alphabetic prefix followed by a fixed number of digits, *e.g.*, ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information.  Each image page or native file assigned a Bates number shall be assigned a sequential number that is unique and maintains a constant length across the entire document production.  No other legend or stamp will be placed on the document image, except confidentiality legends (where applicable) or redactions.

        9.2     Word Processing Documents.  Word processing documents will be processed to include headers and footers.  All date, time, and filename macros will be displayed as the macro field code.  The Parties agree that they are seeking final versions of such documents from one another in this case.

        9.3     Compressed/Zipped Files. All compressed or zipped ESI shall be unzipped or decompressed before production.

        9.4     Decryption. The Parties will make good faith and reasonable efforts to remove encryption from native files prior to production.  If a party cannot remove the encryption from a file, the party will provide a placeholder TIFF image indicating that the file was encrypted. The producing Party will not provide a native file for such documents.

        9.5     De-duplication. A Party is only required to produce a single copy of a responsive document or family of documents.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.

9.6     Email threading. Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic document collection.  A most-inclusive email is one that contains unique content and all of the lesser-included emails, including attachments, for that branch of the email thread.  Each Party may, at its own election, produce only the most-inclusive email threads and any attachments or other non-attachment documents not successfully analyzed by the email threading software for any reason (e.g., file size) to satisfy its production obligations.  Regardless of whether a Party elects to utilize thread suppression, each Party may list on any required privilege log only the most inclusive email threads and any attachments or other non-attachment documents not successfully analyzed by the email threading software.  Additionally, if a Party chooses to produce only the most inclusive emails threads, less-inclusive, non-privileged emails that contain no unique content, but are part of a privileged thread shall be produced.  That is, the Party will either (1) redact only the topmost, privilege portion of an email thread or (2) will produce the less-inclusive portions of the thread separately.  Following production of the most inclusive email threads, and for good cause, a receiving Party may make reasonable requests, with respect to most-inclusive email threads particularly identified in the requests, for metadata associated with individual lesser-included emails.  The producing Party shall cooperate reasonably in responding to any such requests if the requested lesser-included emails otherwise would have been subject to production.

9.7     Embedded Files.  Some Microsoft Office and .RTF files may contain embedded objects.  Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access, and PDF.  Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an

exception provided within this ESI Stipulation.  Non-substantive embedded files, such as company logos and signature blocks, may be produced as a single-page Bates-stamped TIFF image slip-sheet containing the text stating the document has been withheld as non-responsive consistent with Section 6, or excluded from production altogether.

9.8    Date and Time Processing.  All dynamic date and time fields, and all metadata pertaining to dates and times, to the extent they contain a value, will be standardized to Coordinated Universal Time ("UTC").

9.9    No Designation of Discovery Requests.  Production of hard copy documents and ESI in the reasonably usable form set out in this ESI Stipulation will not include any reference to the requests to which a document or ESI may be responsive.

9.10    Foreign Language Documents.  To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the producing Party shall produce all foreign language documents and ESI in the original language.  The producing Party has no obligation to provide a translation of the documents or ESI, or any portion thereof.

10.    IDENTIFICATION AND COLLECTION OF DOCUMENTS.

10.1    Except as otherwise agreed upon, the Parties will view the relevant timeframe to be January 1, 2018 to the present, and the producing Party shall be responsible for determining the appropriate search methodology.  Should any other Party wish to discuss such matters with the producing Party, the Parties shall meet and confer.

11.    PRESERVATION.

11.1    The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in their possession, custody, or control.

9

11.2     The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery.  Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production of ESI from sources that are not reasonably accessible.  The Parties agree that the following ESI is not reasonably accessible:

11.2.1. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

11.2.2. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives.

11.2.3. Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

11.2.4. Online access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

11.2.5. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

11.2.6. Server, system, or network logs.

11.2.7. Logs of calls made from personal devices.

11.2.8. Legacy data or data remaining from systems no longer in use that is unintelligible on the systems in use.

11.2.9. Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

11.2.10.    Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

12.    PRIVILEGE AND PRIVILEGE LOGS.

12.1    The parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications to or from outside legal counsel for the Parties; (b) communications from inside counsel; (c) communications to inside counsel where inside counsel is the only recipient or is related to this litigation; (d) work product; (e) any internal communications within a law firm; (f) any communications regarding litigation holds or preservation, collection, or review in this or any litigation;  (g) any communications or documents that post-dates the filing of the Complaint in the Action on April 8, 2024, or (h) communications to, from, or with an expert working with any Party in connection with the Action.

12.2    The Parties agree that privilege logs shall be produced that comply with Local Civil Rule 26.2 of the Southern District of New York and adopt that Rule's presumption as to a categorical privilege log.  The categorical privilege log will contain: (i) Privilege Category Number; (ii) Document Types; (iii) Privilege Category Description (encompassing the general subject matter(s) of the documents withheld); (iv) a single Date Range for all documents in the Privilege Category; (v) a single list of Custodians for all documents in the Privilege Category; (vi) the senders, recipients and/or authors of the documents and their relationships to the producing

11

Party to the extent not evident from the entry; (vi) Asserted Privilege(s); and (vii) number of documents redacted or withheld for that Privilege Category, unless divulgence of any of this information would cause disclosure of the allegedly privileged information.

12.2    If the requesting Party requires further information with respect to any entry on a categorical privilege log, it shall explain in writing the need for such information and identify with specificity each document or category for which it seeks this information. Within thirty (30) days of such a request, the producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.

13. COSTS AND BURDEN. The Parties believe that the burdens placed on them during this litigation, including during discovery, must be proportional to the litigation itself, including the nature of the claims and the amount in controversy. *See* Fed. R. Civ. P. 1, Fed. R. Civ. P. 26(b)(2)(C). All Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.

14. AMENDMENT OF ESI ORDER. Nothing herein shall preclude any Party from seeking in writing to the Court to amend this ESI Order for good cause shown.

SO STIPULATED AND AGREED.

Dated: March 3, 2026

12

THE GALBRAITH LAW FIRM

By: ___/s/ Kevin Galbraith___
    Kevin Galbraith

Two Waterline Square
400 West 61st St., Suite 1508
New York, NY 10023
t: 212.203.1249

*Counsel for Plaintiffs*

GREENBERG TRAURIG, LLP

By: ___/s/ Sylvia E. Simson___
    Sylvia E. Simson

One Vanderbilt Avenue
New York, NY 10017
t: 212.801.9200

*Counsel for Defendant*
*JPMorgan Chase Bank, N.A.*

McGUIREWOODS LLP

By: ___/s/ Brian E. Pumphrey___
    Brian E. Pumphrey

Gateway Plaza
800 E. Canal St.
Richmond, VA 23219
t: 804.775.7745

*Counsel for Defendant*
*Bank of America, N.A.*

SO ORDERED.

Dated:  March 4, 2026
       White Plains, New York

_____
JESSICA G. L. CLARKE
United States District Judge

13

**Appendix A – Metadata Fields for Production**

1. BEGBATES (Bates number associated with first page of document)

2. ENDBATES (Bates number associated with last page of document)

3. BEGBATESRANGE (Bates number associated with the first page of a family of documents)

4. ENDBATESRANGE (Bates number associated with the last page of a family of documents)

5. CUSTODIAN (Relevant custodian associated with each document)

6. FROM (Sender of e-mail message)

7. TO (Recipient(s) of e-mail message)

8. CC (Recipient(s) of carbon copy of e-mail message)

9. BCC (Recipient(s) of blind carbon copy of e-mail message)

10. TITLE_SUBJECT (Information from title of e-doc or subject of e-mail)

11. SENTDATE (Sent date of e-mail message)

12. SENTTIME (Sent time of e-mail message)

13. FILEEXT (File extension of native document)

14. FILENAME (File name of native e-doc)

15. AUTHOR (Author of document)

16. MD5HASH (MD5 Hash value of document)

17. NATIVELINK (Path to native file in production deliverable)

18. TEXTLINK (Path to text file in production deliverable)

19. DOCTYPE (Type of document, e.g., Email, Email Attachment, E-Doc)